UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR FONSECA, | No. 2:12-cv-0273 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

PROCEDURAL BACKGROUND

On August 18, 2009, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on August 1, 2006. (Transcript ("Tr.") at 116-30.) Plaintiff's application was denied initially and upon reconsideration. (Id. at 65-82.) Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on February 17, 2011. (Id. at 33-56.) Plaintiff was represented by counsel

and testified at the administrative hearing. In a decision issued on May 13, 2011, the ALJ found that plaintiff was not disabled. (Id. at 26.)

The ALJ entered the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since August 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: seizure disorder secondary to alcohol abuse, bipolar disorder, posttraumatic stress disorder (PTSD) and polysubstance (alcohol, cocaine and methamphetamine) abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including substance use disorder, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is unable to engage in sustained work activity on a regular and continuing basis for eight hours per day, five days per week for a forty-hour workweek or an equivalent schedule. In addition, the claimant must avoid working at unprotected heights and dangerous moving machinery based on his alcohol induced seizure disorder.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 21, 1965 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

> 11. If the claimant stopped the substance use, the remaining limitations would not cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would not have a severe impairment or combination of impairments (20 CFR 404.1521 and 416.921).
>
> 12. Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(c) and 416.920(c)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Id. at 13-25.)

On January 11, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 1, 2012.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

/////

>Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
>Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ improperly evaluated plaintiff's impairments at step two of the sequential evaluation and erred by failing to find that plaintiff's severe impairments included carpal tunnel syndrome ("CTS") and cervical degenerative disease. (Pl.'s MSJ (Doc. No. 16) at 7-8.[1]) Plaintiff also argues that his mental impairments were improperly factored out at step two of the sequential evaluation by the ALJ. (Id. at 8-10.)

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1 C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes
2 necessary to do most jobs," and those abilities and aptitudes include (1) physical functions such
3 as walking, standing, sitting, lifting, and carrying, (2) capacities for seeing, hearing, and speaking,
4 (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5)
5 responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing
6 with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

7 The Supreme Court has recognized that the Commissioner's "severity regulation
8 increases the efficiency and reliability of the evaluation process by identifying at an early stage
9 those claimants whose medical impairments are so slight that it is unlikely they would be found to
10 be disabled even if their age, education, and experience were taken into account." Yuckert, 482
11 U.S. at 153.  However, the regulation must not be used to prematurely disqualify a claimant. Id.
12 at 158 (O'Connor, J., concurring).  "An impairment or combination of impairments can be found
13 not severe only if the evidence establishes a slight abnormality that has no more than a minimal
14 effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks
15 and citation omitted).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or
16 combination of impairments only when his conclusion is 'clearly established by medical
17 evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling
18 ("SSR") 85-28).  "Step two, then, is 'a de minimis screening device [used] to dispose of
19 groundless claims[.]'" Id. (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253
20 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard".); Tomasek v. Astrue,
21 No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's
22 burden at step two as "low").

23 With respect to his carpal tunnel syndrome, plaintiff argues that "[e]ven the limited
24 and remote medical evidence makes clear [plaintiff] had a messy, serious carpal tunnel situation
25 affecting his dominant right hand."  (Pl.'s MSJ (Doc. No. 16) at 7.)  In support of this argument
26 plaintiff cites to the operation report from plaintiff's April 4, 2001, carpal tunnel release surgery.
27 (Id.)
28 /////

The ALJ's opinion, however, acknowledged that plaintiff had been diagnosed with carpal tunnel syndrome in his right wrist and had undergone carpal tunnel release surgery in March of 2001, and again in April of 2001. (Tr. at 14.) However, the ALJ's opinion goes on to note that:

> A review of the medical record shows no other treatment for CTS, which suggests his surgeries effectively treated his CTS symptoms. Although the claimant testified he continues to experience numbness in his right hand, he has not been recommended for additional surgery and has not sought recent treatment for his alleged symptoms [Hearing Testimony]. Furthermore, the claimant continued to work as a heavy machine operator in the landscaping business for a number of years after his carpal tunnel release surgeries [Exhibit 2E, 5D and Hearing Testimony].

(Id.)

Although plaintiff's burden at step two may properly be described as "low," it is nonetheless plaintiff's burden to show that his alleged medical impairment is severe. See Yuckert, 482 U.S. at 146 n.5. In this regard, while plaintiff's carpal tunnel syndrome may have been a severe impairment prior to his 2001 surgeries, he has failed to show that after the alleged disability onset date of August 1, 2006[2], he suffered from carpal tunnel syndrome to an extent that it constituted a severe impairment during the relevant time. See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (plaintiff "can only establish an impairment if the record includes signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests–as well as symptoms, i.e., [plaintiff's] representations regarding his impairment.").

With respect to his cervical degenerative disease, plaintiff argues that "the objective evidence is . . . even clearer." (Pl.'s MSJ (Doc. No. 16) at 8.) The ALJ's opinion, however, acknowledged and thoroughly addressed the objective evidence, but nonetheless found that plaintiff's degenerative cervical condition was not a severe impairment, stating:

> The undersigned considered the claimant's diagnosis of degenerative disc disease; however, based on the claimant's lack of subjective complaints as well as the objective medical evidence showing no significant impingement on the spinal canal, the undersigned finds the claimant's degenerative disc disease is not a severe impairment.

---

[2] Over five years after plaintiff's apparently successful carpal tunnel release surgeries.

1  (Tr. at 15.) In this regard, the ALJ noted that in pursuing his disability claim plaintiff did not
2  allege symptoms related to his degenerative disc disease, (see id. at 145, 189, 195, 204), and that
3  when testifying at the February 17, 2011 administrative hearing, plaintiff described his neck as
4  merely, "stiff."[3] (Id. at 52.) Again, plaintiff has simply failed to meet his burden of showing that
5  his alleged medical impairment with respect to his degenerative cervical condition is severe. See
6  Ukolov, 420 F.3d at 1005.

7  With respect to his mental limitations, plaintiff argues that the limitations imposed
8  by his mental impairments were erroneously eliminated, or factored out, by the ALJ at step two of
9  the sequential evaluation. (Pl.'s MSJ (Doc. No. 16) at 8-9.) In this regard, the ALJ's opinion
10 reviewed the evidence relevant to plaintiff's mental impairments and then considered "the four
11 broad functional areas set out in the disability regulations for evaluating mental disorder . . .
12 known as the 'paragraph B' criteria" to determine which, if any, mental limitations would remain
13 if plaintiff stopped his substance use. (Tr. at 24-25.) The ALJ ultimately concluded that plaintiff
14 would have only mild limitations in three of the four broad functional areas and no limitations in
15 the fourth functional area if plaintiff's substance use was stopped. (Id. at 25.)

16 A claimant whose alcoholism or drug addiction is a contributing factor material to
17 a determination of disability is not entitled to Social Security disability benefits. See 42 U.S.C. §
18 423(d)(2) (C) ("An individual shall not be considered to be disabled for purposes of this
19 subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the
20 Commissioner's determination that the individual is disabled."). Accordingly, when the claimant
21 has a history of drug or alcohol abuse, the five-step sequential evaluation must first be conducted
22 "without separating out the impact of alcoholism or drug addiction." Bustamante v. Massanari,
23 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ finds that the claimant is not disabled under the
24 five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with
25 the analysis under 20 C.F.R. § 416.935. Id. If, however, after conducting the five-step inquiry,

---

[3] Moreover, the court notes that when plaintiff was asked at the administrative hearing what prevented him from working he answered merely that it was his "depression . . . right hand and . . . PTS." (Tr. at 38.) Specifically, plaintiff made no mention of cervical degenerative disease.

the ALJ concludes that the claimant is disabled and medical evidence exists of drug addiction or alcoholism, then it must be determined whether the claimant would still be found disabled if he stopped using alcohol or drugs. Id. (citing 20 C.F.R. § 416.935). See also Parra, 481 F.3d at 747 ("the ALJ must conduct a drug and alcoholism analysis . . . by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol."). "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." Parra, 481 F.3d at 747. Moreover, if the analysis reaches this stage, the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Id. at 748.

Here, the ALJ noted that plaintiff had been psychiatrically hospitalized on two occasions in July of 2006, but that on those occasions he was heavily intoxicated and tested positive for use of amphetamines.[4] (Tr. at 24.) Upon his discharge as a sober individual, plaintiff's condition was found to be greatly improved. (Id.) The ALJ also noted that plaintiff had been arrested on several occasions for being under the influence and that while incarcerated following those arrests plaintiff reported feeling better. (Id.) On February 6, 2011, plaintiff completed a rehabilitation program and, at the time of the February 17, 2011 administrative hearing, was not taking any psychotropic medications to treat his mental impairments.[5] (Id.)

Turning to the four broad functional areas, the ALJ found that if plaintiff's substance use was stopped, plaintiff would have only a mild limitation in activities of daily living. In this regard, the ALJ noted that plaintiff maintained his own personal hygiene, drove a car and regularly left his home to attend daily meetings. (Id. at 25.) With respect to plaintiff's social functioning, the ALJ found that plaintiff would have no limitations in this area if his substance

---

[4] Plaintiff's medical records reflect that he was hospitalized on July 9, 2006, after consuming amphetamines and a "good deal of alcohol," (tr. at 325), and was involuntarily held on July 15, 2006, with a blood alcohol level of .19. (Id. at 227.)

[5] The court notes that "[a]ccording to the Administration, the most useful evidence in making this materiality finding is evidence relating to a period when the individual was not using drugs/alcohol." Kirk v. Astrue, 723 F.Supp.2d 693, 697-98 (D. Del. 2010) (quotations and alterations omitted).

use was stopped and noted that claimant was described as calm and cooperative when sober and that he maintained relationships with family and friends. (Id.) In terms of concentration, persistence or pace, the ALJ found that plaintiff would have a mild limitation in this area if his substance use was stopped and noted that plaintiff was able to drive a car in traffic, attend daily sobriety meetings and group therapy sessions. (Id.) Finally, with respect to episodes of decompensating, the ALJ found that plaintiff would not experience episodes of decompensating if his substance use was stopped. (Id.)

Although it is clear from plaintiff's motion filed with this court that he disagrees with the ALJ's findings, plaintiff has offered nothing in the way of evidence or authority that would establish that his alcoholism or drug addiction is not a contributing factor material to the determination of whether he is disabled. Accordingly, the court finds that plaintiff has failed to meet his burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. See Parra, 481 F.3d at 748; cf. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

## CONCLUSION

The court has found that plaintiff is not entitled to summary judgment in his favor with respect to any of his arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 16) is denied;

2. Defendant's cross-motion for summary judgment (Doc. No. 17) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

Dated: September 4, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\fonseca0273.ord.docx